# COMMON PLEAS OF LACKAWANNA CO.

## MARTIN T. LAVELLE vs. THE CITY OF SCRANTON.

### PAY OF COUNCILMEN FOR COMMITTEE SERVICE.

Councilmen in the City of Scranton are not entitled to pay for committee meetings. Acts and ordinances construed.

Opinion by HAND, J.

This is a case stated and raises the question whether members of the Select and Common Councils of the City of Scranton are entitled to daily pay for services in attendance upon committee meetings. The plaintiff was a Councilman of the city from April 1st, 1877, to April 1st, 1879, and during that time has served on various committees to the total amount of thirty-six (36) days, being for thirty-six committee meetings. If the court be of the opinion that the plaintiff is entitled to pay for services on committees, then judgment to be entered for plaintiff for thirty-six dollars, otherwise judgment to be entered for defendant. The case stated cites the 9th section of the Act of Assembly of March 30th, 1867; a supplement to the City Charter (P. L. 633); also Ordinance No. 25, approved March 16th, 1868; Section 2, clause 17, of the Act of Assembly of 23 March, 1874, classifying cities (P. L. p. 240); Manuscript Ordinance of April 18, 1879. By the original charter of the City of Scranton (P. L. 1867, p. 633, Sec. 9), it is enacted that "the Select and Common Councils may by ordinances duly passed, fix the salaries of any of the officers of said city not otherwise fixed by law, at such rate as they may deem proper: *provided,* that two-thirds of the members of each council concur therein: *and provided,* that the pay of each of the members of the Select and Common Councils shall not exceed one dollar for each meeting at which they shall be present." By the Act of May 23d, 1874, classifying cities, adopted by the City of Scranton, among the powers of councils enumerated, is the following: "to regulate and prescribe the powers and duties

and compensation of all officers of the city." The Act of 23 May, 1874, Section 57, P. L. 269, provides that "no acceptance" of this act by a city of the third class "shall be construed to be a repeal or surrender of any rights, powers, privileges, and franchises heretofore conferred on such city, not inconsistent with the provisions of this act." We do not consider section 6, Act of 1867, above referred to in the original charter inconsistent with the provisions in section 2, clause 17, of the Act of 23 May, 1874, but the two may wholly stand in harmony with each other. The power therefore given to the City of Scranton to fix the compensation of the councilmen, is contained in the Act of March 30th, 1867, section 9, above cited. Does that act give power to pass an ordinance to pay councilmen for attendance upon committee meetings? A municipal corporation derives its powers wholly from the sovereign power granting its charter. It can exercise only such powers as are given in express words, or necessarily or fairly implied in or incident to the powers expressly granted or essential, not simply convenient, but indispensible to the objects of the corporation. If a power is in doubt, it is not in existance. These principles, Dillon in his work on municipal corporations says, are of transcendent importance, and lie at the foundation of municipal corporations. The act of 1867 giving power to fix the compensation of councilmen, contains a limitation or exception, that it shall not exceed one dollar for each meeting at which they shall be present. What meeting is intended? Why of course the meeting of the council; no other meeting is contemplated. If it were, it is reasonable to suppose it would be mentioned. A limitation in an Act of Assembly is to be strictly construed. There is no certainty that committee meetings were intended, and if not, then there is doubt, and that the law resolves against the corporation. A committee meeting not a meeting of council; it is to prepare for or facilitate the work of the council when it does meet. The books are filled with cases recognizing the principle of strict construction of charters of corporations in nearly every State

of the Union. It is not necessary to cite them; they are
grouped in Dillon on Corporations, Vol. 1, page 173. We
therefore conclude that the ordinance of 18th April, 1879,
was *ultra vires*, so far as it provided for the payment for
attendance upon committees. There is also another ob-
jection to the ordinance of 1879. The ordinance of 16
March, 1868, had already provided for the pay of council-
men at one dollar for each and every meeting of each
council at which the member was present. The Constitu-
tion of the State provides (Art. 3, Sec. 11), and the Act of
23 May, 1874, Sec. 5 (with a doubtful legal qualification),
prohibits giving any extra compensation to any public
officer  *  *  *  after services shall have been rendered
or contract made  *  *  *. Now the ordinance of 1879,
by its own provisions, proposes to antedate itself two years
or more, and take effect in 1877. This we consider is
giving extra pay after the service is rendered. The service
was rendered by virtue of being a councilman. His pay as
such was already fixed, and it was the duty of plaintiff to
serve, and he did serve voluntarily, on committees. Now
the ordinance proposes to increase his pay after the service
is rendered. Such an ordinance is also against the policy
of the law. It is not shown to us that any contract or
inducement was held out prior to 1877 for the rendering
of these services; that the charter prescribed payment
therefor; that the people elected their councilmen expecting
to pay them for such service, and that this ordinance was
passed to fulfill a moral or legal obligation incurred by the
city, or to correct a mistake inadvertently made. The
people are justly jealous of attempts to vote away their
money and increase their taxation by a mere spontaneous
dip into the public treasury. The time was when the
sovereign power of the Legislature could possibly authorize
this, but since the Constitution of 1874, even this power is
now taken away. The number of councilmen in the City
of Scranton is seventy-six, and taking this present instance
as the average attendance upon committees, the total
amount would be $2,736,00., simply for services as com-

mittee men, besides the regular pay as councilmen. We are asked to give by implication, inference, or construction, this effect to the charter of the city and the ordinance of 1879. Under the law as we find it, we cannot so extend the defined powers of this municipal corporation. It would practically nullify the limitation of the Act of 1867, for even the councils do not control the number of meetings each committee might hold and attend. Such an intent by the Legislature should be clearly indicated in the organic law of the city before the courts can resolve the doubt in such a direction. We therefore enter judgment in favor of the defendant.

In Thompson vs. The State, 60 Ga. 619, there was a dis cussion on a motion for a new trial whether newly-discovered evidence was cumulative. The charge was murder, and the newly-discovered witness, a lady, would swear, among other things, "that Tony Mason, the deceased, said to defendant: 'I got one child by your sister, and I'll be damned if I don't get another one if I can.' Defendant told deceased not to throw that up to him. Deceased said, 'By God, I am a man.' The quarrel commenced when deceased told defendant about the child." It was hardly necessary for the witness to add: "The whole crowd was drunk." The court held the evidence not cumulative.

In a divorce case in Georgia the Judge concluded his opinion in these words: "Without intending to reflect upon the wife in this case, for I take it for granted that the libellant is to blame, still I warn all plain men against marrying women by the euphonious names of Dulcinea, Felixiana, etc. These mellifluous names will do for novels, but not for everyday life."